**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| REJENNA M.,[1] | No. 5:25-cv-01153-AJR |
|       Plaintiff, | |
|   v. | **MEMORANDUM DECISION AND ORDER** |
| FRANK BISIGNANO, Commissioner of Social Security, | |
|       Defendant. | |

**I.**

**INTRODUCTION**

Rejenna M. ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income ("SSI").  The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge.  (Dkts. 6, 8, 9.)  For

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II.

## PROCEDURAL HISTORY

On May 17, 2022, Plaintiff filed applications for DIB and SSI, alleging disability commencing April 15, 2021.  (Dkt. 10-6 at 2-26.)  The Commissioner denied the claims by initial determination on August 15, 2022, (Dkt. 10-5 at 21-26), and upon reconsideration on November 29, 2022.  (Id. at 28-33.)  Plaintiff then requested a hearing before an Administrative Law Judge.  (Id. at 35.)  On March 6, 2024, Administrative Law Judge Amy Chau (the "ALJ") conducted an in-person hearing[2] and subsequently published an unfavorable decision on May 20, 2024.  (Dkt. 10-3 at 22-42, 43-73.)  Plaintiff requested review of the ALJ's decision by the Appeals Council on June 25, 2024.  (Dkt. 10-5 at 126-29.)  The Appeals Council denied Plaintiff's request for review on April 9, 2025.  (Dkt. 10-3 at 2-8.)  On that date, the ALJ's decision became the final decision of the Commissioner.  See 42 U.S.C. § 405(h).  Plaintiff now seeks review of the ALJ's final decision.

## III.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing work previously performed or any other

---

[2] Vocational expert Skyler DePedro (the "VE") appeared by telephone.  (Dkt. 10-3 at 45.)

substantial gainful employment that exists in the national economy.  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

<u>Tackett</u>, 180 F.3d at 1098-99; <u>see also</u> <u>Bustamante v. Massanari</u>, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five.  <u>Bustamante</u>, 262 F.3d at 953-54.  Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry.  <u>Id.</u> at 954.  If, at step four, the claimant meets their burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience.  <u>Tackett</u>, 180 F.3d at 1098, 1100; <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may do so by the testimony of a VE or by

reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## IV.

## THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Dkt. 10-3 at 25-36.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 15, 2021, the alleged onset date. (Id. at 27.) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; Graves' disease; and uterine fibroids with iron deficiency anemia. (Id. at 28.) The ALJ also determined that Plaintiff had the non-severe physical impairment of tendinosis of the right shoulder and non-severe mental impairments of major depressive disorder and generalized anxiety disorder. (Id. at 28-30.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listings in the regulations. (Id. at 30.)

The ALJ assessed Plaintiff's RFC and concluded that she could perform light works with the limitations that she:

> lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently; stand and/or walk for six hours out of an eight-hour workday with regular breaks; sit for six hours out of an eight-hour workday with regular breaks; push and/or pull within the weight limits

indicated for lifting and carrying; frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch, and crawl; avoid concentrated exposure to extreme heat; and avoid any exposure to hazards, such as heavy moving machinery and unprotected heights.

(Id. (bold omitted).)  The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (Id. at 31.)

At step four, the ALJ found Plaintiff was capable of performing past relevant work as a "food deliverer, general clerk, and computer operator."  (Id. at 34 (bold omitted).)  Additionally, at step five, the ALJ determined that "there are other jobs that exist in significant numbers in the national economy that [Plaintiff] also can perform, considering [Plaintiff's] age, education, work experience, and residual functional capacity."  (Id. at 35.)  Specifically, the ALJ found that Plaintiff could perform the representative occupations of marker (Dictionary of Occupational Titles ("DOT") # 209.587-034, approximately 165,000 such jobs in the national economy), collator operator (DOT # 208.68-010, approximately 31,000 such jobs in the national economy), and router (DOT # 222.587-038, approximately 29,000 such jobs in the national economy).  (Id. at 35-36.)  Accordingly, the ALJ found that Plaintiff had not been under a disability as defined by the Act from April 15, 2021, the alleged onset date, through the date of the ALJ's decision.  (Id. at 36.)

## V.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's

decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  Garrison v. Colvin, 759 F.3d 995 (9th Cir. 2014) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006)); Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)).  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279).  To determine whether substantial evidence supports a finding, the court must "consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner.  Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

## VI.

## DISCUSSION

Plaintiff raises a single ground for relief.  Plaintiff claims that the ALJ impermissibly rejected her subjective symptom testimony.  (Dkt. 13 at 7.)  Plaintiff contends that the ALJ failed to explain how the objective medical evidence was inconsistent with her testimony at the hearing or how her daily activities demonstrate that she is capable of maintaining substantial gainful work.  (Id. at 7-18.)  Defendant argues that substantial evidence supported the ALJ's discounting of

6

Plaintiff's testimony based on the inconsistency between Plaintiff's alleged limitations and the objective medical evidence, her activities of daily living and ongoing work activity, and her lack of aggressive treatment commensurate with her alleged level of impairment.  (Dkt. 14 at 2-7.)  For the reasons set forth below, the Court affirms the decision of the Commissioner.

**A.** **Legal Standard.**

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis.  See Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017).  First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged.  See Garrison, 759 F.3d at 1014.  "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  Id. (emphasis in original) (citation omitted).  "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof."  Id. (internal quotation marks omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity.  See Trevizo, 871 F.3d at 678; see also Smolen, 80 F.3d at 1284 ("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").

In discrediting the claimant's subjective symptom testimony, the ALJ may

consider the following:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal quotation marks omitted).  Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant.  See Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).  In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms.  See Smolen, 80 F.3d at 1284; accord Burrell, 775 F.3d at 1137.  However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented.  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (internal quotation marks omitted).

Further, the ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal quotation marks omitted); see Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." (internal quotation marks omitted)).  The ALJ must identify "what testimony is not credible and what

8

evidence undermines the claimant's complaints." Brown-Hunter, 806 F.3d at 493. Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

**B.      Plaintiff's Subjective Symptom Testimony.**

At the March 6, 2024 hearing, Plaintiff testified that she was currently working as a delivery driver for Grubhub. (Dkt. 10-3 at 49.) Since April 2021, she had worked for part-time for delivery services Postmates, DoorDash, and Grubhub. (Id. at 49-50.) Plaintiff was also working part-time as a blackjack or roulette dealer at a casino, which started in January 2021. (Id. at 51.) In 2021, she worked for six months as the administrator of a group home for foster youth. (Id. at 52-53.) She testified that she had to leave that job because her "physical ailments" did not allow her to perform the duties for which she was hired. (Id. at 53.) Prior to that, she had worked as an administrator at another group home, a clerk at the Riverside County courthouse, and a computer network administrator. (Id. at 53-55.)

Plaintiff testified that she was unable to work full-time because of her fibroids, thyroid issues, and mental health. (Id. at 57.) She stated that she could not drive because her medications caused blurry vision, drowsiness, sleepiness, and lightheadedness. (Id.) She continues to work at Grubhub because she can "clock out and go home" whenever she wants. (Id. at 58.) She lives in a house with three roommates and has a valid drivers license. (Id.) She is able to work an eight-hour shift at the casino because they give her a stool so she can "fluctuate between sitting and standing" but testified that she did not think she could continue to do a job that is mostly seated. (Id.)

Plaintiff testified that she works three to four days a week and, when not working, stays in bed. (Id. at 59.) She stated that "[s]ome days are worse than others" and, on a bad day, she had "severe depression" with "heart pounding,"

9

"drowsiness, fatigue[ ], pain throughout the body, insomniac, diarrhea, vomiting." (Id. at 60.)  She testified that she had "bad days" approximately 12 times per month causing her to miss work seven or eight times per month.  (Id.)  She indicated that her vision, tachycardia, mental health, fibroids, and Graves' disease had "gotten worse" to the point that she could not go out in public.   (Id. at 60-61.)  She felt that her lightheadedness, rapid heart rate, vision impairment, and drowsiness from medication causes her to nearly "pass out," leaving her unable to concentrate or stay alert to do her jobs.  (Id. at 61-62.)

Plaintiff also testified that her mental illness caused "PTSD, slight schizophrenia, and severe depression," leaving her unable to focus to even pick up a delivery order.  (Id. at 62.)  She complained that she was "not all there" mentally since her parents and a close friend died.  (Id. at 63.)  She had been referred to a therapist for her depression, but they recommended improving her coping skills rather than taking medication.  (Id.)  She testified that she is no longer able to dance, work out at the gym, go to amusement parks, or take long walks.  (Id. at 63-64.)  She estimated that she could sit for 50 minutes to an hour, could stand for an hour to an hour and 10 minutes, and could only lift approximately five pounds.  (Id. at 64.)

## C.    Analysis.

The ALJ engaged in the two-step analysis required by Trevizo and found at the first step that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  (Dkt. 10-3 at 31.)  However, the ALJ concluded at the second step that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (Id.)  The ALJ discounted portions of Plaintiff's subjective symptom testimony by relying on inconsistencies between her testimony and the objective medical evidence, inconsistencies between her testimony and her activities of daily living, and her intermittent and conservative

treatment history as to her purported ailments.  (Id. at 31-33.)

### 1.   Objective Medical Evidence.

First, the ALJ noted that Plaintiff's statements about the alleged intensity, persistence, and limiting effects of her impairments were inconsistent with the objective medical evidence.  (Dkt. 10-3 at 31.)  The ALJ acknowledged Plaintiff's history of Graves' disease but noted that there was "no indication [Plaintiff] has experienced any chronic complications or that her condition is not adequately controlled with medication" while compliant.  (Id. at 32.)  The ALJ further noted that diagnostic thyroid scans failed to show any "abnormal lymph nodes, goiters or other chronic issues" and examining medical sources identified no disabilities "due to thyroid dysfunction" or "functional restrictions more limiting than those found by the State Agency."  (Id.)

Similarly, the ALJ acknowledged that Plaintiff suffered from uterine fibroids and anemia/iron deficiency but found "no evidence of chronic related complications."  (Id.)  The ALJ noted that the medical record lacked evidence that Plaintiff needs surgery to remove the fibroids or that they "significantly impact [Plaintiff's] general functioning."  (Id.)  As for her chronic anemia, "there is no evidence of any associated complications or signs of recurrent arrhythmias."  (Id.)

Regarding her orthopedic issues, Plaintiff reported two auto accidents in July and December 2021, after which she complained of neck and back pain.  (Id.)  The ALJ noted that a February 2022 right shoulder MRI scan showed only mild tendinosis; a February 2022 cervical spine MRI scan revealed multi-level disc protrusions with only mild neural foraminal narrowing; and February and March 2022 lumbar spine MRI scans showed L5/S1 and L4/5 disc protrusions with only mild neural foraminal narrowing and mild to moderate bilateral lateral recess stenosis.  (Id. (citing Dkt. 10-11 at 57-85, 154-59).)  An orthopedic examination in March 2022 showed Plaintiff had "lumbar spine tenderness and reduced ranges of

11

motion but without any neurological deficits or radicular pain signs" and was diagnosed with lumbar sprain, spasm, radiculopathy, and disc herniation, and advised against prolonged sitting or standing and heavy lifting.  (Id. at 32-33 (citing Dkt. 10-11 at 160-67).)  At additional examinations that month, Plaintiff exhibited bilateral shoulder AC joint tenderness, cervical spine tenderness, and reduced ranges of motion and was diagnosed with right shoulder tendonitis, a left shoulder sprain, and cervical facet arthropathy.  (Id. at 33 (citing Dkt. 10-11 at 168-81).)  The ALJ noted that Plaintiff did not undergo surgery or receive any facet joint injections, as recommended, but did participate in a "short course of physical therapy between March and May 2022."  (Id. (citing Dkt. 10-11 at 182-87).)

Ultimately, the ALJ determined that "the available medical evidence does not support a disability finding" and "[t]here is nothing in the record to support her allegation that she would be incapable of sustaining full time work."  (Id.) Importantly, Plaintiff points to no medical evidence in the record that undermines the ALJ's findings.  (See Dkt. 13 at 7-13.)  Accordingly, the Court concludes that the ALJ properly discounted Plaintiff's subjective symptom testimony regarding the severity of her alleged impairments due to a lack of supporting medical evidence in the record.  See Smartt v. Kijakazi, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." (italics omitted)); Carmickle v. Comm'r, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony"); Social Security Ruling ("SSR") 16-3p ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities . . . ."). As set forth above, there is substantial evidence in the record to support the ALJ's

12

findings that Plaintiff's subjective symptom testimony was inconsistent with the objective medical evidence.

### 2.    Activities of Daily Living.

Second, the ALJ found that Plaintiff's "daily activities are inconsistent with [her] statements about the intensity and persistence of symptoms." (Dkt. 10-3 at 31.) Specifically, the ALJ noted that, in April 2022, Plaintiff "reported that she was pain free and she could engage in normal activities of daily living," including dancing. (Id. (citing Dkt. 10-11 at 255).) In that physical therapy examination note, after completing all of her therapy sessions, Plaintiff reported being "pain free for her normal activities of daily living" with only "mild pain with dancing" and was "able to tolerate prolonged sitting while driving with 0-1/10 pain." (Dkt. 10-11 at 255.) This evidence directly contradicted Plaintiff's statements regarding her purported pain and sitting limitations, indicating a higher level of functioning than she alleged at the hearing. See Bray, 554 F.3d at 1227 (finding ALJ properly found claimant not credible in part when her testimony at administrative hearing contradicted her statements to evaluating physician); Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1196 (9th Cir. 2004) (finding ALJ properly rejected claimant's testimony based, in part, on contradictory statements regarding his daily activities); see also Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even where [a claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (holding that a claimant's ability to "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity").

Additionally, the ALJ cited the fact that Plaintiff "continues to work (albeit

13

not at full substantial gainful activity earnings levels), as a delivery driver and private party casino worker," describing herself as "being 'very active' as of mid-2022 performing these jobs and testified she continues to perform these jobs." (Dkt. 10-3 at 33.) "An ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled." Ford v. Saul, 950 F.3d 1141, 1156 (9th Cir. 2020). The fact that Plaintiff continued to work several different jobs after the alleged onset date was evidence that the ALJ could properly consider in discounting the severity of her stated impairments. See Richardson v. Comm'r of Soc. Sec., 588 F. App'x 531, 533 (9th Cir. 2014) (finding that the claimant's "ability to work part-time after applying for benefits" supported the ALJ's decision to discount the claimant's testimony); Carter v. Astrue, 472 F. App'x 550, 552 (9th Cir. 2012) (finding that the ALJ properly discounted the claimant's allegations, in part, because the claimant "worked part-time for nearly another year after his alleged disability onset date"); Hannah Leigh J. v. Saul, 2021 WL 1110286, at *15 (C.D. Cal. Mar. 23, 2021) (finding that the ALJ "properly discounted [p]laintiff's subjective symptom statements" because evidence "showed [she] worked several part-time jobs" after the alleged onset date and was "currently working" when she filed the disability application). Accordingly, substantial evidence supports the ALJ's determination that Plaintiff's subjective symptom testimony was inconsistent with her activities of daily living.

**3.     Conservative Medical Treatment.**

Third, in discounting Plaintiff's subjective symptom testimony, the ALJ found "that the degree of [Plaintiff's] subjective complaints is not comparable to the frequency or extent of treatment sought by [Plaintiff]." (Dkt. 10-3 at 31.) For example, the ALJ noted that Plaintiff's treatment regimen for her symptoms related to fibroids and thyroid issues was "conservative," only taking propranolol intermittently as needed. (Id. at 32 (citing Dkt. 10-9 at 20; Dkt. 10-10 at 65).)

14

Diagnostic thyroid scans did not show any abnormal lymph nodes, goiters or other chronic issues and Plaintiff "has declined more aggressive treatment (e.g. thyroidectomy) in favor of ongoing medication usage." (Id.)

Regarding her chronic anemia, the ALJ noted that Plaintiff had been "less than fully compliant with taking iron supplements per medical advice" and "declined intravenous iron therapy." (Id.) As for her alleged mental impairments, treatment notes showed "she sought therapy to learn coping skills, but her treatment did not include any psychotropic medication." (Id.) Finally, as discussed previously, Plaintiff's complaints of shoulder, neck, and back pain were effectively treated and relieved by a short course of physical therapy. (Id. at 32-33.) Thus, the ALJ determined that "the frequency or extent of treatment sought" by Plaintiff was "not comparable to the degree of [her] subjective complaints." (Id. at 32.)

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony." Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007). Further, an unexplained or inadequately explained failure to seek treatment is also a valid basis for discounting a claimant's credibility. Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007). Here, Plaintiff has not offered any explanation for her failure to seek more consistent and aggressive treatment for the claimed debilitating symptoms testified to before the ALJ. Accordingly, the Court concludes that the ALJ properly relied on evidence of intermittent and conservative medical treatment to discount Plaintiff's subjective symptom testimony. See Roquemore v. Comm'r of Soc. Sec., 374 F. App'x 693, 695 (9th Cir. 2010) (approving ALJ's rejection of subjective symptom testimony where "the ALJ noted that treatment of [the plaintiff's] impairments had been conservative in nature, consisting of only medication and physical therapy"); Tommasetti, 533 F.3d at 1039-40 (finding subjective symptom allegations undermined because Plaintiff responded favorably to conservative treatment including physical therapy and medication).

15

### 4.    Conclusion.

In sum, the Court concludes that the ALJ provided multiple specific, clear and convincing reasons that are supported by substantial evidence in the record for discounting Plaintiff's testimony regarding the debilitating effects of her symptoms—*i.e.*, that her allegations were not consistent with the objective medical evidence and her activities of daily living, and that she received only conservative treatment for her claimed impairments.  As such, remand is not warranted.  See Rollins, 261 F.3d at 857 (rejecting "argument that the ALJ improperly discounted [claimant's] testimony" where "[t]he ALJ gave clear and convincing reasons for discounting portions of [plaintiff's] excess pain testimony, and those reasons were supported by substantial evidence").

## VII.
## CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner.  The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: April 6, 2026     _____
                         HON. A. JOEL RICHLIN
                         UNITED STATES MAGISTRATE JUDGE

16